597 So.2d 494 (1992)
Nancy Robertson Trobaugh, Wife of/and Julius TROBAUGH and Edwina Robertson
v.
Windy (Wendy) R. MIGLIORE, Champion Insurance Company and Allstate Insurance Company.
No. CA 90 2310.
Court of Appeal of Louisiana, First Circuit.
March 6, 1992.
*495 James S. Rees, III, Covington, for Allstate.
Paul E. Farmer, Covington, for Nancy Trobaugh.
Mark E. Seamster, New Orleans, for Enterprise & Travelers.
Charles M. Hughes, Jr., Bogalusa, for Migliores.
Before WATKINS, CARTER and FOIL, JJ.
FOIL, Judge.
Plaintiffs and their insurer appeal the trial court's summary judgment dismissing defendants Enterprise Leasing Company of New Orleans (Enterprise) and Travelers Insurance Company (Travelers) from this lawsuit. We affirm in part, reverse in part and remand the matter to the trial court.

FACTS
On March 11, 1988, plaintiff, Nancy Robertson Trobaugh, was driving a rented vehicle owned by Enterprise when she was hit from the rear by a car driven by defendant, Wendy R. Migliore. Mrs. Trobaugh filed suit to recover for the injuries she sustained in the accident. Her husband and daughter also filed suit for damages for loss of consortium.
Mrs. Trobaugh was driving the Enterprise vehicle as an authorized driver under a rental agreement executed by her husband, Julius Trobaugh. Enterprise is a qualified self-insured automobile leasing company under La.R.S. 32:1042. At the time of the accident, Enterprise was also the named insured in a Travelers self-insured automobile excess liability policy with a liability limit of $9,500,000 per accident, above a retained limit of $500,000 each accident.
Ms. Migliore was covered under a liability insurance policy issued by Champion Insurance Company (Champion) with $10,000/$20,000 limits.[1] The Trobaughs had uninsured/underinsured motorist (UM) coverage through a policy issued by Allstate *496 Insurance Company (Allstate) covering their three vehicles. The Allstate policy contained limits of $50,000/$100,000, as well as medical payments coverage in the amount of $5,000.
Suit was brought against Ms. Migliore, Champion, Allstate, Enterprise and Travelers. Plaintiffs claimed that Enterprise, although self-insured, also provided liability coverage on the rental vehicle and was therefore obligated to offer UM coverage pursuant to the requirements of La.R.S. 22:1406. Plaintiffs asserted that, because they were never offered such coverage and never rejected the coverage in writing, Enterprise owes UM coverage equal to the liability coverage on the vehicle. Plaintiffs further claimed that Travelers owed them coverage for liability in excess of Enterprise's self-insured amount.
Enterprise and Travelers filed a motion for summary judgment urging that plaintiffs' claims against them should be dismissed because: (1) self-insurance is not insurance, therefore La.R.S. 22:1406 does not apply to the Enterprise rental agreement; and (2) plaintiffs are not "insureds" under the Travelers policy because the sole named insured is Enterprise.
After a hearing, the trial court granted the motion for summary judgment, dismissing Enterprise and Travelers from the lawsuit. In written reasons for judgment, the court relied on the following authorities: Donnelly v. Greyhound Rent-A-Car, 490 So.2d 377 (La.App. 4th Cir.), writ denied, 493 So.2d 1220 (La.1986); and 15 La.Civil Law Treatise (McKenzie & Johnson).
Both plaintiffs and Allstate appeal the trial court's judgment. The issues on appeal are as follows: (1) whether a self-insured automobile leasing company is required by La.R.S. 22:1406(D), the UM statute, to offer UM coverage to its lessees; and (2) whether the lessor's excess insurer provided UM coverage to plaintiffs and, if so, for what amount. We will address the dismissal of each defendant separately.

ENTERPRISE LEASING COMPANY
In Louisiana, becoming self-insured under the terms of La.R.S. 32:1042 is merely one of four ways that owners and operators of motor vehicles can provide proof of financial responsibility as required by the Louisiana Motor Vehicle Safety Responsibility Law (LMVSR), La.R.S. 32:851-1043. La.R.S. 32:861. The self-insurance certificate indicates that the self-insurer has the ability to pay damages if found legally liable. La.R.S. 32:1042. This certificate is not a "policy" for purposes of the UM coverage requirements of La.R.S. 22:1406(D).[2]Jones v. Henry, 542 So.2d 507 (La.1989); Jordan v. Honea, 407 So.2d 503 (La.App. 1st Cir.1981), writs denied, 409 So.2d 654, 660 (La.1982). Thus, those who satisfy the LMVSR through self-insurance certificates do not have to provide UM coverage. However, a different situation is involved when a self-insured automobile leasing company provides liability coverage to its lessees by virtue of its rental agreement. In that instance, separate and distinct from a certificate of self-insurance, there is a contract, which may by its terms, be considered a "policy" in which UM coverage must be provided in an amount equal to the liability coverage provided therein. See, Jones v. King, 549 So.2d 350 (La.App. 5th Cir.), writ denied, 552 So.2d 401 (La.1989); Pollard v. Champion Insurance Company, 532 So.2d 838 (La.App. 4th Cir.), writ denied, 533 So.2d 374 (La.1988); Ashline v. Simon, 466 So.2d 622 (La.App. 5th Cir.), writ denied, 472 So.2d 28 (La.1985). Essentially, these cases hold that when a self-insured car rental company offers liability insurance on the rented vehicle, the company places itself in the position of a vehicle liability insurer and must give the renter an opportunity to accept or reject UM coverage in accordance with La.R.S. 22:1406(D). If it *497 fails to do so, UM benefits are deemed included in the contract.
The Donnelly case, relied upon by the trial court, did not involve a self-insured rental agency. There, the Fourth Circuit held that an automobile leasing agency did not have to provide lessees an opportunity to accept or reject UM coverage, but could reject UM coverage in its insurance contract with a third party and impose that rejection on its lessees. The court noted, however, that the rental company did not by its contract language agree or purport to insure the liability of its lessee.
One year after the trial court's ruling in the case before us, the Fourth Circuit reversed its decision in Donnelly. In Quittem v. National Car Rental Systems, Inc., 582 So.2d 1337 (La.App. 4th Cir.1991), the court held that an automobile lessor, which is not self-insured, is required to offer UM coverage to its lessees, even though the lessor's employee had declined UM coverage under the liability policy insuring the rental fleet. In reaching this decision, the court reviewed the jurisprudence of the other circuit courts of appeal, as well as its own line of cases. Several of the cases reviewed, including Donnelly, involved automobile agencies which purchased insurance from third parties and rejected UM coverage in those policies. Others involved rental companies which were self-insured. After considering all of those cases, the court in Quittem stated:
[W]e have concluded that self-insured automobile rental agencies should not be subject to a different rule than that applied to agencies which contract with third parties to provide insurance for their rental cars.... The reality is that all automobile rental agencies place themselves in the same position as liability insurers because they effectively "sell" insurance to their lessees. If the agency contracts with a third party to provide the insurance coverage, the agency then effectively "sells" a portion of that policy to each of its lessees. The vast weight of the jurisprudence, including the most recent case in this circuit, holds that rental agencies are thus required to offer their lessees an opportunity to accept or reject UM coverage, just as any other automobile liability insurer; we believe that is the better rule, the one most consistent with the legislative intent of the UM statute.
Quittem v. National Car Rental Systems, Inc., 582 So.2d at 1339-1340.
An examination of the pertinent provisions of the Enterprise rental agreement reveals that Enterprise did, in fact, place itself in the same position as a liability insurer by providing insurance coverage. The agreement provides, in part:
6. BODILY INJURY/PROPERTY DAMAGE RESPONSIBILITY TO THIRD PARTIES: If Renter or other authorized driver is in compliance with all provisions of this agreement, and is between 25 and 70 years old, Owner's financial responsibility extends to Renter and other drivers named on this agreement and approved by Owner for third party claims arising from the use of the car as required by Motor Vehicle Minimum Financial Responsibility Laws of the state where the car is operated, unless this agreement requires the Renter to provide such coverage....
7. UNINSURED MOTORIST PROTECTIONPERSONAL INJURY PROTECTION: Uninsured Motorist and/or Personal Injury protection is not provided unless required by law; if required, protection furnished is minimum allowed by law in state car is operated in.
Below the terms and conditions of the rental agreement is a separate, delineated section which reads in part as follows:
BY RENTER'S AND OWNER'S REPRESENTATIVES SIGNATURE, THIS PROVISION IS MADE A PART OF THE RENTAL AGREEMENT. NO INSURANCE OR PROTECTION IS PROVIDED BY OWNERRENTER PROVIDES ALL INSURANCE. RENTER WARRANTS THAT HE HAS A VALID POLICY OF AUTO INSURANCE COVERING RENTAL VEHICLE FOR COLLISION, COMPREHENSIVE, AND LIABILITY; AND IS NOT AN ASSIGNED RISK.
*498 Below that language, there is a place for the signatures of the owner's representative and the renter, as well as the name of the renter's insurance company, the policy number and its expiration date. This section of the rental agreement was not signed by either party and is completely blank.
After reviewing the three provisions of the rental agreement together, we conclude that, in addition to being self-insured to protect itself against judgments rendered against it, Enterprise is providing the lessee renter with liability coverage. Because the parties did not agree that the renter would provide such coverage by signing the separate insurance section, according to paragraph 6, Enterprise undertook to provide coverage as required by the Motor Vehicle Minimum Financial Responsibility Laws of the appropriate state. In Louisiana, the LMVSR mandates that all liability policies provide at least $10,000 to cover personal injury of any one person, $20,000 when two or more persons are injured, and $10,000 to pay property damage of others. La.R.S. 32:900. Because Enterprise provided liability coverage through its rental agreement, by law the UM statute is applicable to this case.
La.R.S. 22:1406(D), the UM statute, requires that Enterprise give to its lessee the opportunity in writing to accept or reject UM coverage. If the company fails to give this option, the rental contract is deemed to include UM coverage equal to the amount of liability coverage provided. This is consistent with paragraph 7 of the rental agreement, wherein Enterprise agreed to furnish UM protection in the minimum allowed by Louisiana law. In this case, Enterprise did not give Mr. Trobaugh the option to accept or reject UM coverage. Therefore, we find that Enterprise is liable by virtue of its rental agreement to provide UM coverage to plaintiffs up to the same minimum limits required of any liability policy, which is $10,000.00 each person/$20,000.00 each accident.

TRAVELERS INSURANCE COMPANY
Travelers issued a self-insured automobile excess liability policy to Enterprise. The policy had liability limits of $9,500,000 per accident in excess of a $500,000 retained limit. A review of the policy provisions reveals that Travelers agreed to indemnify Enterprise for "loss" in excess of the "retained limit" up to the specified liability limits. The policy specifically states that "[l]iability under this policy shall not attach unless and until the insured has paid or is legally obligated to pay the full total of the `retained limit'." "Retained limit" is defined as "the amount, self-insured by the insured, which is stated in Item 4 of the Declarations payable as `loss'," namely, $500,000.
The Travelers policy does not expressly provide for UM coverage. Because Enterprise did not validly reject or amend the coverage, the policy is deemed to provide UM coverage under La.R.S. 22:1406(D). This protection begins at the self-insured retention level, $500,000. Hebert v. Williams, 526 So.2d 835, 839-840 (La.App. 3d Cir.), writ denied, 532 So.2d 150 (La. 1988). We held above that Enterprise provides UM protection to plaintiffs in the minimum amounts of $10,000 each person/$20,000 each accident. Clearly then, under the explicit language of the Travelers policy, Enterprise's exposure is within the self-insured retained limit and below Travelers' excess coverage. See Hebert v. Williams, 526 So.2d at 840. Accordingly, the trial court did not err when it found Travelers entitled to summary judgment.
The portion of the trial court judgment dismissing the Travelers Insurance Company is affirmed. We reverse that portion of the summary judgment dismissing Enterprise Leasing Company from this action and remand the matter to the district court for further proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED.
NOTES
[1] The rights and obligations of Champion have since been assumed by the Louisiana Insurance Guaranty Association (LIGA) due to Champion's liquidation.
[2] We note that LSA-R.S. 22:1406(D)(3) was amended by Acts 1991, No. 626, § 1 to provide that:

Any party possessing a certificate of self insurance as provided under the Louisiana Motor Vehicle Safety Responsibility Law, shall be an "insurer" within the meaning of uninsured motorist coverage provided under the provisions of this Subsection.