**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 99-30506
_____

MARY LOUISE HARRIS and THOMAS ALEX HARRIS,

                                        Plaintiffs-Appellants,

                    versus

WAL-MART STORES, INC.,

                                        Defendant-Appellee.
_____

Appeal from the United States District Court
for the Middle District of Louisiana
_____

**March 16, 2000**

Before GARWOOD, WIENER, and DENNIS Circuit Judges:

WIENER, Circuit Judge:

     In this diversity case, Plaintiff-Appellant Mary Louise Harris ("Harris") appeals the district court's grant of summary judgment to Defendant-Appellee Wal-Mart Stores, Inc. ("Wal-Mart") on the basis that workers compensation is her exclusive remedy and thus bars her torts claim.  We affirm.

I.

Facts and Proceedings

     Harris was employed by Wal-Mart as the manager of the boys' wear department.  On the day in question, she arrived at the Wal-Mart store at 5:55 a.m. to report for her 6:00 a.m. shift.  As required, she entered the front of the store through the public entrance – there was no special entrance for employees – and

1

proceeded to the rear of the store where the employee time-clock was located. Wal-Mart policy required workers to clock-in immediately before starting work; they were prohibited from clocking-in early. To get to the time-clock that morning, Harris walked down the lamp aisle, and, as she was doing so, two fellow employees who were stocking shelves negligently dropped a box weighing 200 pounds on her. After the accident, Harris clocked-in and then completed an accident report. She suffered injury to her lower back as a result of the accident.

Harris sued Wal-Mart in tort in state court. Wal-Mart removed the case to federal court on the basis of diversity and then filed a motion for summary judgment, contending that the Louisiana workers compensation statute provided Harris's exclusive remedy against her employer. The district court granted summary judgment, and Harris appealed.

## II.

## Analysis

We review the district court's grant of summary judgment <u>de novo</u>, applying the same standard as that court.[1] In diversity cases, we apply the law of the forum state. As Wal-Mart advanced exclusive remedy as an affirmative defense, it bore the burden of proof on the elements of that provision of the law.[2]

La. Rev. Stat. Ann. § 23:1031(A) requires an employer to pay

---

[1] <u>United States v. Johnson</u>, 160 F.3d 1061, 1062 (5th Cir. 1998).

[2] <u>Mundy v. Department of Health and Human Resources</u>, 593 So.2d 346, 349 (La. 1992).

compensation if a worker is injured "by accident arising out of and in the course of his employment."  La. Rev. Stat. Ann. § 23:1032(A)(1)(a) mandates that, between employer and employee, such remedy "shall be exclusive."

To be covered by workers compensation, the accident must (1) "arise out of" and (2) occur "in the course of" employment. Louisiana courts view these factors as mutually interdependent: "In a close case a strong showing of 'course of employment' has been held to counterbalance a relatively weak showing of 'arising out of employment.'"[3] The obverse applies equally.

The "arising out of" prong focuses on the character or source of the risk and on the relationship of the risk to the nature of employment.  "An accident arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment."[4]  The principle criteria for determining "course of employment" are time, place, and employment activity.[5]

Mundy v. Department of Health and Human Resources[6] contains the Louisiana Supreme Court's most recent treatment of the question central to this appeal.  In that case, a licensed practical nurse on her way to report to work at a hospital was stabbed by an unknown assailant in an elevator at the hospital.  She had arrived

---

[3] Id.

[4] Id.

[5] Id.

[6] 593 So.2d 346 (La. 1992).

at the hospital at approximately 11:17 p.m. to report for her shift. Employees on that shift were expected to arrive at 11:15 p.m. but were not considered late until 11:20 p.m.; the preceding shift did not actually end until 11:30 p.m. Mundy entered the hospital on the first floor and proceeded to the east bank of elevators, one of which would take her to her work station on the eleventh floor. As the elevator doors were closing, an unidentified man jumped in the elevator and pushed the button for the second floor. As he was about to exit the elevator on the second floor, he turned back toward Mundy and attacked her with a knife.

Mundy sued her employer in tort. The court held that Mundy's injury neither arose out of nor occurred in the course of her employment by the hospital, and allowed her tort claim to proceed.

Louisiana courts have recognized that Mundy represents the "extreme outer limits" of this area of the law and that the state's supreme court has not encouraged expansion of that holding to recognize more employee torts claims against their employers outside of workers compensation.[7] We have previously noted that Louisiana courts clearly hold that "the compensation statute is to be liberally construed so as to include all services that can reasonably be said to be within the statute not only when the injured person seeks its protection, but when he attempts to have

---

[7] See, e.g., Bosse v. Westinghouse Elec., Inc., 637 So.2d 1157, 1159-60 (La. App. 1994).

himself excluded from the coverage of the act."[8]  The statute provides an efficient means of compensating employees for workplace injuries and avoids exposing employers to unlimited liability. "The Workers' Compensation Act represents a compromise where the employer is responsible to pay limited benefits regardless of fault and the employee loses his right to fully recover in tort.  To effectuate the surrender of these valuable rights by both the employer and employee, recovery is exclusively limited to benefits under the Workers' Compensation Act and the employer has immunity from tort actions."[9]

We find Mundy distinguishable in several respects and, accordingly, conclude that Harris's recovery against Wal-Mart is limited to workers compensation.

1.  Course of Employment:

A.  Place: In Mundy, the nurse's work duties were limited to the eleventh floor, which she had not yet reached at the time of the attack.  She had no job responsibilities and had never performed work duties on either the first or second floors, between which the attack occurred.  In this case, by contrast, although Harris was the manager of the boys' department, her duties were not limited to that space.  Wal-Mart explicitly required all employees, especially supervisors, to monitor the entire sales floor for

---

[8] Isthmian S.S. Co. of Delaware v. Olivieri, 202 F.2d 492, 494 (5th Cir. 1953).

[9] Thomas v. State, 662 So.2d 788, 791-92 (La. App. 1995) (citing W. MALONE & A. JOHNSON, WORKERS' COMPENSATION LAW AND PRACTICE § 361, in 14 LOUISIANA CIVIL LAW TREATISE (3d ed. 1994)).

safety and other problems. Even though most of her work was performed in the boys' department, Harris did have job responsibilities throughout the store, including the lamp aisle where she sustained the injury. Thus, Harris (unlike Mundy) was at the place of her employment.[10]

B. Time: On this factor, the cases are indistinguishable. In Mundy, the nurse was proceeding to her work station approximately three minutes prior to the exact time she had to arrive without being considered late. In this case, Harris was proceeding to the time clock from the front of the store approximately five minutes before her shift began. Thus, in each case, the plaintiff was injured only a few minutes before her scheduled clock-in time.[11]

C. Activity: In Mundy, the nurse clearly was performing no job duties or responsibilities at the time of the attack. She was proceeding via a public elevator, an enclosed conveyance, to her workplace some ten stories above. In contrast, contends Wal-Mart, Harris was performing a job duty by proceeding to clock-in because Wal-Mart policy explicitly required her to do so as a prerequisite to beginning her shift and prohibited her from clocking-in early. In addition, she could reach the time clock only by passing through

---

[10] See Bosse, 637 So.2d at 1159 (distinguishing Mundy on the basis that the nurse had no work duties on the first or second floors where she was injured whereas Bosse was injured getting off the elevator on the seventh floor where he worked).

[11] Cf. Mitchell v. Brookshire Grocery Co., 653 So.2d 202, 205 (La. App. 1995) (noting that Louisiana jurisprudence has been inclined to recognize workers compensation coverage of injuries occurring on the employer's premises within a reasonable time after the completion of the employee's work day).

the aisles from the front entrance to the rear of the store.[12] Thus, urges Wal-Mart, Harris was performing a required activity in the course of employment at the time of the injury.

We are not entirely persuaded by that argument. Logically, Harris, Mundy, and virtually all other workers are required to pass through some part of their employers' premises to arrive at the specific work station. That logical conclusion does not necessarily make the trip a job-related activity, however. Nevertheless, as noted above in our "place" analysis, Harris's job description did require her to monitor the entire sales area of the store for problems, which could well have required her to observe the state of the aisles in the lamp and other departments as she made her way to the time-clock at the rear of the store.[13] There is, however, no evidence to that effect in the record.

As Wal-Mart's showing on course of employment is relatively weak, it must produce stronger evidence that the accident arose out of Harris's employment.[14]

---

[12] Cf. Mundy, 593 So.2d at 350 (noting availability of other alternative routes for her to reach her work station).

[13] See, e.g., Hughes v. Olive Garden Italian Restaurant, 731 So.2d 1076, 1080 (La. App. 1999) (holding that cashier, who had clocked out, but was tasting a new dessert in the walk-in freezer where she slipped was engaged in a job "activity" in the "course of employment" because employees were encouraged, although not required, to taste desserts so they could recommend them to customers); see also Mitchell, 653 So.2d at 204 (holding that employee is entitled to reasonable period of time, which is regarded as within the course of employment, for attendance to personal needs, outside of the day's work, while on employer's premises).

[14] Mitchell, 653 So.2d at 204 (when "the employee is barely within the outer boundary of the course of employment, a very

2. Arises Out of Employment: This element requires Wal-Mart to show that the character or source of the risk is greater for an employee than for a person not engaged in employment.[15] We conclude that Wal-Mart's showing on this element is stronger than was Mundy's employer's proof.

In Mundy, the nurse was injured by a third-party criminal attack which could have occurred (1) to anyone (2) anywhere. The presence and act of the criminal was certainly unanticipated equally by an employee or an invitee. In this case, by contrast, Harris was injured by a box that was dropped on her as a result of the negligence of her fellow Wal-Mart employees who were stocking the store shelves. Their presence and activity was fully anticipatable.

"A physical defect in the premises of the employer is very different from an independent random act of violence committed by an unrelated third party stranger. A random act of violence could occur anywhere, but a defect in the premises at the place of employment is 'peculiar and distinctive' to that location."[16] We perceive Harris's injury from a box accidentally dropped by co-workers engaged in typical work activities as being considerably more analogous to a "physical defect" in the premises that is

strong showing ... that the risk arose out of the employment is necessary").

[15] Mundy, 593 So.2d at 349.

[16] Bosse, 637 So.2d at 1159 (citing Templet v. Intercoastal Truck Line, Inc., 230 So.2d 74 (La. 1969) and noting that Templet was cited with approval in Mundy).

**8**

"peculiar and distinctive" to the location than is a random criminal attack in a public place such as the assault suffered by Mundy in the elevator. In fact, the risk of a falling box arises even more directly out of the employment than does a premises defect, such as a parking lot pothole;[17] Wal-Mart's essential business is purchasing, displaying, and selling merchandise whereas a grocery store's essential business is not maintaining a parking lot (even though the presence of the lot undoubtably benefits the business).

Louisiana courts have noted that the fact that an employee is exposed to a particular risk of injury with greater frequency than a member of the general public, is relevant to the "arising out of employment" element. The Louisiana Supreme Court quoted the United States Supreme Court at length for the proposition that an employee's injury may arise out of employment and thus be covered by workers compensation if the employee is "peculiarly exposed," through regular, frequent contact, to a common hazard (in that case, railroad tracks), even though the general public also faces that risk on an intermittent basis.[18]

Falling boxes are the sort of risk that is greater for Harris,

---

[17] See, e.g., Mitchell, 653 So.2d at 205.

[18] Templet 230 So.2d at 80 (citing Cudahy Packing Co. of Nebraska v. Parramore, 263 U.S. 418 (1923)). "As an employee at that location, plaintiff must be presumed to 'encounter' this risk 'to a greater extent or frequency than by the general public.'" Bosse, 637 So.2d at 1159 (citing Mundy, 593 So.2d at 350) (exposure to defective elevator that did not level out at floor); see also Mitchell, 653 So.2d at 205 (exposure to pothole in parking lot); Francisco v. Harris Management Co., 643 So.2d 386, 388 (La. App. 1994) (exposure to obstructions in poorly lit parking lot).

as an off-the-clock employee of Wal-Mart, than for any given customer who is not an employee of Wal-Mart. Presumably, Harris was exposed to the potentiality of injury by negligent co-workers at least four times each day, clocking in and out once in the morning, twice at lunch, and again at her shift's end. Thus, the risk of injury from her employment was many times greater than any given non-employee of Wal-Mart. We conclude that Wal-Mart made a relatively strong showing that the risk of injury "arose out of employment," even though its showing on "course of employment" was relatively weak. We are satisfied that when all relevant facts and circumstances are viewed as a whole, Harris's claim is covered by workers compensation and is thus her exclusive remedy against her employer.

III.

Conclusion

We hold that even though the injury to Harris was <u>barely</u> incurred "in the course of" her employment, the risk clearly "arose out of" her employment. As such, her claim for damages caused by her co-workers' negligence while all were on their common employer's premises is covered by workers compensation exclusively. We therefore affirm the district court's grant of summary judgment, rejecting Harris's action in tort against her employer, Wal-Mart.

AFFIRMED